STATE *vs.* ELISHA DEAN.

1.  HOMICIDE—"VOLUNTARY MANSLAUGHTER" DEFINED.

    "Voluntary manslaughter" is the unlawful killing of a person without malice, as where one person kills another in the heat of blood, usually in fighting or under sudden and great provocation.

2.  HOMICIDE—"INVOLUNTARY MANSLAUGHTER" DEFINED.

    "Involuntary manslaughter" occurs where a person, in committing an unlawful or lawful act without caution or requisite skill, undesignedly or unintentionally kills another.

3.  HOMICIDE—"KILLING BY MISADVENTURE" DEFINED.

    "Killing by misadventure" is accidental killing of a person where the slayer is doing a lawful act, unaccompanied by any criminal carelessness or reckless conduct.

4.  HOMICIDE—VIOLATION OF RECKLESS DRIVING STATUTE CAUSING DEATH BY COLLISION HELD "MANSLAUGHTER."

    Under 33 *Del. Laws*, *c.* 10, prohibiting operation of motor vehicles at greater speed than is reasonable and proper, having regard to the width, traffic, and use of the street, etc., and making a speed in excess of 35 miles an hour a *prima facie* violation, the act of a person driving so recklessly as to cause a collision with the person or property of another or endangering his life or limb is unlawful, and, if death results, is "manslaughter."

5.  HOMICIDE—UNLAWFUL KILLING WHILE VIOLATING STATUTE DEPENDENT ON PHYSICAL CONDITIONS AT TIME OF ACCIDENT KNOWN TO DEFENDANT.

    In a manslaughter prosecution, the jury should consider the physical conditions existing at the time of the accident, which defendant knew or ought to have known, in determining whether he violated 33 *Del. Laws*, *c.* 10, prohibiting reckless driving of motor vehicles.

6.  HOMICIDE—JURY MUST FIND DEATH CAUSED IN MANNER AND BY MEANS ALLEGED IN INDICTMENT TO FIND MANSLAUGHTER.

    To find defendant guilty of manslaughter while violating 33 *Del. Laws*, *c.* 10, prohibiting reckless driving of motor vehicles, the jury must be satisfied from the evidence beyond reasonable doubt that death was caused in the manner and by the means alleged in the indictment.

7. HOMICIDE—MANSLAUGHTER BY KILLING WHILE VIOLATING STATUTE PROHIBITING RECKLESS DRIVING.

In a prosecution for manslaughter, while violating 33 *Del. Laws*, *c.* 10, prohibiting reckless driving of motor vehicles, if defendant, when he collided with deceased, was driving in reckless manner or at excessive speed, and deceased's death resulted therefrom, defendant was guilty.

8. HOMICIDE—VERDICT OF "GUILTY OF ASSAULT ONLY" HELD PROPER, IF MANSLAUGHTER WAS NOT SUFFICIENTLY PROVED.

In a manslaughter prosecution, if the jury were not satisfied that defendant was guilty of manslaughter, but were satisfied beyond reasonable doubt that he was guilty of an assault on deceased, because of collision with his car, the verdict should be "guilty of assault only."

(*October* 3, 1923.)

PENNEWILL, C. J., RICHARDS and RODNEY, J. J., sitting.

*Aaron Finger* and *Clarence A. Southerland*, Deputy Attorneys-General, for the State.

*Robert G. Harman* for defendant.

For report of this case in the Supreme Court, *See 2 W. W. Harr.* (*32 Del.*) *469.*

Court of Oyer and Terminer for New Castle County, September Term, 1923.

Indictment for manslaughter, No. 6, September Term, 1923.

PENNEWILL, C. J., charging the jury:

The defendant is indicted for manslaughter. There are several counts in the indictment which is based on a statute of this state regulating the speed and operation of motor vehicles, approved March 26, 1923, being chapter 10, *Volume 33, Laws of Delaware.* (a)

The statute provides that,

"No person shall operate a motor vehicle upon any public street or highway of the state recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the street or highway, the intersection of streets or highways and weather conditions, the weight of the vehicle and the condition of its brakes, or so as to have caused a collision with the person or property of another, or so as to endanger the life or limb of another. * * *

"If the rate of speed of a motor vehicle operated on any public street or highway within this state exceeds thirty-five miles an hour for a distance of one-quarter of a mile, * * * such rate of speed shall be deemed *prima facie* evidence that the person operating such motor vehicle is operating the same in violation of the provisions of this section."

(a) For a prosecution for manslaughter under *Vol. 2⁸, Laws of Del., p.* 43, *see State v. DiSalvo, supra, p. 233.*

The first count of the indictment charges that on the nineteenth day of May, 1922, the defendant was operating a motor vehicle on the public highway, so recklessly that it collided with another motor vehicle operated by James E. Lockerman, and he thereby willfully and feloniously made an assault on the said Lockerman, by reason of which he was thrown to and against certain parts of the motor vehicle, sustaining injuries thereby from the effect of which he died on the day following.

The second count differs from the first in charging that the defendant on the day aforesaid was operating the motor vehicle recklessly, having regard to the traffic then and there on the highway.

The third count charges that the defendant was operating a motor vehicle at a greater rate of speed than was reasonable and proper, having regard to the traffic and use of the said highway.

The fourth count charges that the defendant was unlawfully operating a motor vehicle so as to have caused a collision with the motor vehicle of James E. Lockerman.

The fifth count charges that the defendant operated a motor vehicle recklessly in that he did not keep a proper lookout for other vehicles on the highway. In other respects the second, third, fourth and fifth counts are similar to the first.

The indictment being for manslaughter, it is necessary for the court to tell you as clearly as we can what constitutes that crime.

[1]   Manslaughter is the unlawful killing of a person without malice, and is either voluntary or involuntary. Voluntary manslaughter is where one person kills another in the heat of blood, and usually occurs in fighting, or under sudden and great provocation.

[2, 3]   Involuntary manslaughter, which is the kind charged in this case, is where a person in committing an unlawful act, or in committing a lawful act without proper caution or requisite skill, undesignedly or unintentionally kills another. Killing by misadventure is the accidental killing of a person where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct.

It is not denied that James E. Lockerman was killed as the result of a collision between the car operated by the defendant and a car operated by the said Lockerman, on the 19th day of May last, about 11.30 o'clock p. m., at a point in the public highway in this county north of the town of Smyrna, and on the macadam road a little south of where the concrete road ended. It is not denied that the defendant in driving his Willys-Knight motor vehicle southward from Wilmington, instead of turning from the concrete road onto the macadam road north of Smyrna continued for a short distance straight ahead, from the concrete road onto the rough dirt road, and swerved therefrom to the macadam road, striking the Ford car operated by Lockerman.

The state claims that the defendant was, at the time of the collision, driving his motor vehicle recklessly, and at a greater rate of speed than was reasonable and proper, having regard to the traffic and use of the highway, and as a result thereof Lockerman was killed. The state also claims that Lockerman was driving his car at a speed not exceeding five or six miles an hour, and that it had magneto lights in front which were burning at the time of the collision.

The defendant denies that he was, at the time of the collision driving his care recklessly or at a high or unlawful rate of speed, but on the contrary was driving at a very moderate rate of speed, to-wit, not exceeding fifteen miles an hour; that because of the darkness and fog he did not see, and could not see, the car driven by Lockerman, which had no lights that he could see; and that because of the kind of head lights on his car, the upper half being green, the defendant claims he could not see the danger sign on the concrete road near the place of the accident.

The defendant claims that the accident which resulted in the death of Lockerman was unavoidable, and that the killing was, therefore, by misadventure, it being entirely accidental.

[4] We say to you it is unlawful in this state for any person to drive a motor vehicle recklessly, or at a greater rate of speed, than is reasonable and proper under the physical conditions existing at the time and place, or so recklessly as to cause a collision with the

person or property of another, or so as to endanger the life and limb of another.

If a person drives a motor vehicle in violation of the statute that we have quoted, he is guilty of an unlawful act, and if death results therefrom the driver would be guilty of manslaughter.

[5] In determining whether a driver is guilty of violating said statute the jury should consider the physical conditions existing at the time of the accident, which were known or should have been known to the defendant, because what might be reckless driving or excessive and unlawful speed under some conditions might not be under different conditions. It might depend on the condition of the highway, and its use and other conditions in respect to danger or safety at the time, and the defendant's knowledge thereof.

[6] The important issue in this case is whether the defendant at the time of the accident was driving his automobile in such a reckless manner or at such a rate of speed as was a violation of the statute above mentioned, that regulates the speed and operation of motor vehicles in this state.

We have been asked by the defendant to give you binding instructions, that is, to direct you to return a verdict in his favor because, as he claims, there is no proof that Lockerman was killed in the manner and by the means alleged in the indictment, viz.: by being thrown to and against certain parts of the motor vehicle in which he was riding. We decline to grant defendant's prayer for binding instructions, but we charge you that in order to find the defendant guilty of manslaughter you must be satisfied from the evidence beyond a reasonable doubt that the death was caused in the manner and by the means alleged in the indictment. (The Court here charged as to the effect of good character and conflict of testimony.)

[7] If after carefully considering all the testimony in the case you are satisfied beyond a reasonable doubt that the defendant, at the time the car he was driving collided with Lockerman's car, was driving in a reckless manner or at a rate of speed that was in violation of the law of the state regulating the speed and operation of motor vehicles, and the death of James E. Lockerman re-

sulted as charged in the indictment, your verdict should be guilty. But if you do not so believe, or if you believe that Lockerman's death was the result of an unavoidable accident, your verdict should be not guilty.

[8]   If you are not satisfied from the testimony that the defendant is guilty of manslaughter, but are satisfied beyond a reasonable doubt that he is guilty of an assault on said Lockerman because of the collision with his car, your verdict should be guilty of an assault only.